**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**REBECCA L.**

                             **Plaintiff,**                        **22-CV-00141-HKS**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                             **Defendant.**

---

### DECISION AND ORDER

As set forth in the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #10.

### BACKGROUND

On May 22, 2020, plaintiff, at the age of 36, protectively filed a Title II application for a period of disability and disability insurance benefits. Dkt. #6, pp. 206-212.[1] Plaintiff alleged she was disabled due to degenerative disc disease in her low back; two bulging discs in her low back; back pain radiating to her hips and legs; stomach ulcers; depression/anxiety; restless leg syndrome; severe pain in her right hand; left knee pain; and migraines, with an onset date of March 12, 2019 and a date last insured of December 31, 2020. Dkt. #6, pp. 227-237.

---

[1] Record citations use the page number(s) generated by the Court's electronic filing system.

The SSA denied plaintiff's claim initially on August 24, 2020, Dkt. #6, p. 93, and on reconsideration on October 27, 2020. Dkt. #6, p. 108. Plaintiff requested a hearing, and a telephonic hearing was held on March 19, 2021 before Administrative Law Judge ("ALJ") Paul Georger. Dkt. #6, pp. 42-77. Plaintiff appeared with counsel at the hearing.

Plaintiff testified that she is 5' 7" tall and weighed 215 pounds. Dkt. #6, p. 49. She is married and lives with her husband, two children, and her mother. *Id.* She has a driver's license and drives. *Id.*

Plaintiff testified that she has a GED, and she can read, write, and do some math. Dkt. #6, pp. 49-50. She last worked as a cashier at a grocery store but stopped working in 2015. Dkt. #6, p. 50. She has not applied for jobs or worked since her alleged onset date of March 12, 2019. Dkt. #6, p. 52.

Plaintiff further testified that she has been unable to work due to low back pain which radiates to both of her legs. Dkt. #6, pp. 52-53. She testified that the pain is constant, and walking, standing, bending over, and lifting anything heavy make it worse. Dkt. #6, p. 53. She also testified that her pain medication does not help and that her pain level on a scale of 1 to 10 begins in the morning around 8 and gets worse the more she does. Dkt. #6, pp. 53-54.

Plaintiff testified that if she were sitting at a desk, she could sit for about 15 to 20 minutes but then would have to move to "something softer." Dkt. #6, p. 54. She can

stand or walk for about 10 to 15 minutes but then must take a break, and she cannot lift more than about 5 pounds. *Id.*

Plaintiff further testified that physical therapy made her pain worse. *Id.* She had back surgery for scoliosis when she was 13 years old, and in 2016, she had a fusion surgery for her neck. Dkt. #6, p. 56. Her doctors told her that surgery on her low back would be too risky. *Id.*

Plaintiff testified that she has trouble sleeping and gets 3 to 4 hours of sleep each night. *Id.*

Plaintiff also testified that she uses a cane prescribed by her doctor, but mostly when she goes outside. Dkt. #6, p. 58. She had also been prescribed medicine for anxiety and depression since losing her daughter the previous year. *Id.* She testified that she has no problems with personal care such as showering, but that it takes her a little longer than a normal person. *Id.* Plaintiff testified that she cannot keep up with household chores and that her mother does everything, including laundry. *Id.*

Plaintiff testified that she goes shopping but always has someone go with her. Dkt. #6, pp. 58-59. She and her family sometimes go out for dinner. Dkt. #6, p. 59.

On examination by her counsel, plaintiff testified that the scoliosis surgery when she was 13 years old involved the placement of a rod in her back, and her doctors

told her that may put more strain on her lower spine. Dkt. #6, pp. 61-62. She also testified that her current pain medications "don't work at all." Dkt. #6, p. 62.

She testified that she also has stomach issues and that if she does not take her medicine, she throws up. Dkt. #6, pp. 62-63. She also has arthritis in her left knee which bothers her every day and affects her walking. Dkt. #6, p. 63.

Plaintiff testified that she does not shop alone because her legs sometimes "go numb," and she needs someone to help with her kids when that happens. Dkt. #6, p. 64. She also testified, as to switching between sitting and standing, that she could not do that for an 8-hour workday because "I spend a lot of my day laying down." Dkt. #6, p. 65. She estimated that she spends 8 to 9 hours each day reclining or lying flat. Dkt. #6, p. 66.

Further, plaintiff testified that she has two children ages 5 and 7, and that her mother helps by bathing them and making dinner. *Id.*

Finally, plaintiff denied having any difficulty with concentration or focus. Dkt. #6, p. 67.

The ALJ then heard testimony from Christine Spaulding, a vocational expert ("VE"). The ALJ asked the VE to consider whether plaintiff could perform her past work if she had the following restrictions: limited to light work with occasional use of ramps and

stairs; no use of ladders, ropes, or scaffolds; occasional crawling; and she would need a sit/stand option, changing positions every 20 minutes. Dkt. #6, p. 71. The VE testified that, with those restrictions, plaintiff could not perform her past work. Dkt. #6, p. 72.

The ALJ next asked the VE to consider that plaintiff was born on March 27, 1983, and is a younger person; that she has a high school education and has her past relevant work experience; and has the residual functional capacity set forth in the first hypothetical. *Id.* The VE testified that, considering those factors, plaintiff would be able to perform jobs in the national economy such as cashier jobs in parking garages, cafeterias, and some convenience stores and restaurants. *Id.* The VE testified that plaintiff could also perform price marker and collator operator jobs. *Id.*

Finally, the ALJ asked the VE to add to the second hypothetical the following restrictions: plaintiff would be limited to sedentary work with occasional handling with the right hand; no use of ramps and stairs; no use of ladders, ropes, or scaffolds; no balancing; occasional stooping; no kneeling, crouching, or crawling; and a sit/stand option, changing positions every 15 minutes. *Id.* The VE testified that, with those restrictions, there are no jobs in the national economy that plaintiff could perform. Dkt. #6, pp. 72-73.

On cross-examination, the VE testified that, for the jobs she stated plaintiff could perform, no more than 10% off-task time and regular absences of two days per month would be tolerated. Dkt. #6, pp. 73, 75.

On June 1, 2021, the ALJ issued an unfavorable decision finding that plaintiff was not disabled. Dkt. #6, pp. 20-32. The Appeals Council denied plaintiff's request for review on December 30, 2021, making the ALJ's decision the final decision of the Commissioner. Dkt. #6, pp. 6-11. Plaintiff filed this action on February 17, 2022. Dkt. #1.

## DISCUSSION AND ANALYSIS

### Legal Standards

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve

months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

Here, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity between the alleged onset date of March 12, 2019 and her date last insured of December 31, 2020; (2) plaintiff has the severe impairments of degenerative disc disease of the cervical spine status-post cervical fusion surgery with instrumentation, lumbar ankylosis and scoliosis with radiculopathy, status-post lumbar fusion surgery with instrumentation, degenerative

joint disease of the left knee, and obesity;  (3) plaintiff's impairments do not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform light work[2], except occasional use of ramps and stairs, no use of ladders, ropes or scaffolds, occasional balancing, stooping, kneeling, crouching and crawling, and she would require a sit/stand option changing positions every 20 minutes; (5) plaintiff is unable to perform any past relevant work; and (6) through the date last insured, plaintiff was capable of working as a Cashier II, Price Marker, and Collator Operator and is not, therefore, disabled within the meaning of the SSA. Dkt. #6, pp. 22-32.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec*, 515 F. Supp.3d 2, 7 (W.D.N.Y.  2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b).

support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)). Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

### Challenges to the ALJ's Decision

Plaintiff makes three challenges to the ALJ's decision: (1) he failed to make any findings regarding plaintiff's need to use a cane, despite medical records and Dr. Lee's opinion that a cane was medically necessary; (2) the ALJ's sit/stand option was not

grounded in the medical evidence and was not supported by plaintiff's testimony; and (3) he failed to incorporate Dr. Deneen's opined mental limitations in the RFC, despite finding his opinion persuasive. Dkt. #8-1, p. 1.

### Use of a Cane

On August 13, 2020, consultative medical examiner Dr. Russell Lee examined plaintiff. Dkt. #6, pp. 366-370. Dr. Lee noted that plaintiff reported constant low back pain that was worse with walking, standing, bending, or lifting. Dkt. #6, p. 366. Plaintiff told Dr. Lee that she could "sit for about 30 minutes, stand for about 15 minutes, walk for about 15 minutes, [and] climb one flight of stairs." Dkt. #6, p. 367.

Dr. Lee noted plaintiff's account of her daily activities: "She cooks daily. She does not do any cleaning or laundry; her husband does that. She does shopping once a week. Childcare daily. She showers three to four times a  week. She dresses herself daily." Dkt. #6, p. 367.

Dr. Lee then conducted a physical examination of plaintiff and noted the following in "General Appearance, Gait, Station:"

> The claimant appeared to be in no acute distress. Gait: Limp favoring right side. She was wearing a knee brace which did not change her gait. *She used a cane which did not change the gait at all. She uses this for balance and weightbearing. It is medically recommended, and is medically necessary. Can walk on heels and toes without difficulty.* Squat 1/2. Stance normal. Needed no help changing for exam or getting on and off exam table. Able to rise from chair without difficulty.

Dkt. #6, p. 368 (emphasis added).

In his concluding "Medical Source Statement," Dr. Lee stated only: "The claimant has **moderate** limitation to prolonged standing, walking great distances, bending, lifting. I defer to Psychiatry regarding the claimant's psychiatric history." Dkt. #6, p. 369.

Plaintiff states in her brief that "the ALJ inexplicably did not address Dr. Lee's opinion that the cane was medically necessary when he evaluated the opinion for persuasiveness." Dkt. #8-1, p. 11. This mischaracterizes the record.

In formulating plaintiff's RFC, the ALJ specifically noted that "Dr. Lee opined the cane was necessary." Dkt. #6, p. 28. He noted, however, that Dr. Lee also observed that the cane did not change plaintiff's gait, and she could still walk on her heels and toes without difficulty. *Id.*

The ALJ then found Dr. Lee's opinion "mostly persuasive" because it was supported by medical records, but he noted that the limitations Dr. Lee expressed were "somewhat vague in terms." Dkt. #6, p. 30.

Furthermore, the ALJ noted that Dr. Lee's assessment of plaintiff's restrictions in standing, walking great distances, bending and lifting as "moderate" was generally consistent with the opinions of state agency reviewing consultants J. Lawrence,

M.D. and J. Koening, M.D., who did *not* include the use of a cane in their assessments of plaintiff's RFC. Dkt. #6, p. 30.

Specifically, both Dr. Lawrence, on initial review, and Dr. Koening, on reconsideration, considered Dr. Lee's examination notes and his statement that the cane was medically necessary. Dkt. #6, pp. 89-90, 104-105. They found, however, that his opinion was only "partially consistent" with the evidence in the file because: (1) Dr. Lee's opinion about the cane was contrary to plaintiff's most recent treating source examination, during which she "walked without issues;" and (2) Dr Lee's opinion relied "heavily on the subjective report of symptoms and limitations provided by the individual, and the totality of the evidence does not support the opinion." Dkt. #6, pp. 88, 90, 102, 104-105.

The ALJ found the opinions of Dr. Lawrence and Dr. Koening "persuasive overall" and noted that they were supported by the record and "make reference to supported documentation consistent with the medical record." Dkt. #6, p. 30.

The ALJ also noted that plaintiff's statements about the limiting effects of her impairments were inconsistent with other evidence of record, including her activities of daily living. Dkt. #6, p. 29. Specifically, the ALJ noted that plaintiff reported to the consulting examiners that she cared for her young children, shopped, cooked, and attended to personal care tasks with minimal difficulties. Dkt. #6, p. 29.

It is well established that an ALJ may accept part of a doctor's opinion and reject others. *Jacqueline C. v. Comm'r of Soc. Sec.*, CASE #20-cv-01606, 2022 WL

4632226, at *6 (W.D.N.Y. Sept. 30, 2022) (citing *Camille v. Colvin*, 652 F. App'x 26, 29 n.5 (2d Cir. 2016)). This is exactly what the ALJ did with Dr. Lee's opinion.

Plaintiff's reliance on *Charles F. v. Comm'r of Soc. Sec.*, 19-CV-1664-LJV, 2021 WL 963585 (W.D.N.Y. Mar. 15, 2021), is thus misplaced. First, the Court there found that the ALJ erred by completely ignoring the medical opinion of plaintiff's treating physician assistant who noted, in part, that plaintiff "constantly" used a cane to walk. *Id.* at *3. Second, the Court found that the ALJ erred by failing to consider *whether* plaintiff still needed a cane *or* to incorporate use of the cane in plaintiff's RFC. *Id.* at *4.

No such errors are present in this case. The ALJ did not ignore Dr. Lee's opinion; rather, he discussed it at length. Dkt. #6, pp. 28, 30. Second, by relying on the opinions of Dr. Lawrence and Dr. Koening in evaluating the persuasiveness of Dr. Lee's opinion, the ALJ adopted their reasoning as to why they did not agree with Dr. Lee about plaintiff's need for a cane. *See Sherry T. v. Comm'r of Soc. Sec.*, CASE # 1:21-cv-00977, 2023 WL 8030129, at *5 (W.D.N.Y. Nov. 20, 2023) ("[T]he ALJ considered and found persuasive the prior administrative medical findings of Drs. M. Butler and S. Juriga, who explicitly considered and discussed Dr. Deneen's opinion in assessing that plaintiff had only a mild impairment in concentrating, persisting, and maintaining pace.").

The ALJ's formulation of this aspect of plaintiff's RFC thus clearly conforms to applicable Second Circuit authority that the RFC need not perfectly correspond to any particular medical opinion and that the ALJ is to "weigh all of the evidence available to

make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted).

### The Sit/Stand Option

Plaintiff next argues that the ALJ erred by including a sit/stand option in her RFC because it was not consistent with the evidence or her testimony. This argument is not well taken.

Upon questioning by the ALJ, plaintiff testified that she could sit for about 15 to 20 minutes, and that she could stand or walk for about 10 to 15 minutes before taking a break. Dkt. #6, p. 54. When questioned by her counsel, plaintiff testified that she could not alternate sitting and standing for an 8-hour workday because "I spend a lot of my day laying down." Dkt. #6, p. 65.

Plaintiff's allegation of error on this issue is essentially a disagreement with the ALJ's assessment of plaintiff's credibility regarding her limitations. Dkt. #8-1, p. 14 ("This is critical testimony because it undermines the ALJ's finding that Plaintiff could actually perform a job at the light level, switching positions between sitting and standing every 20 minutes for a full eight-hour workday.").

The ALJ specifically found that plaintiff's testimony about the "intensity, persistence, and limiting effects" of her symptoms was inconsistent with other evidence of record, and that the symptoms were not as limiting as she claimed. Dkt. #6, p. 29.

In this regard, the ALJ recounted plaintiff's medical records, which reflected stable objective findings "inconsistent with the claimant's report of no relief from treatment modalities." Dkt. #6, p. 29.

Further, the ALJ noted that plaintiff's activities of daily living were "not as limited to the extent one would expect, given the complaints of disabling symptoms and limitations." *Id*. As noted above, plaintiff reported to the consultative examiners that she cared for her young children, shopped, cooked, and attended to personal care tasks with minimal difficulties. *Id.* The ALJ concluded that such activities belied the degree of disability plaintiff claimed. *Id. See Patrick F. G. v. Comm'r of Soc. Sec.*, 1:20-CV-0537, 2021 WL 3421446, at *6 (W.D.N.Y. Aug. 5, 2021) (ALJ properly considered plaintiff's activities of daily living in determining his RFC and evaluating his subjective statements about his pain and limitations).

Contrary to plaintiff's argument, the ALJ's inclusion of a sit/stand option is also supported by other record evidence. Plaintiff reported to Dr. Lee that she could "sit for about 30 minutes, stand for about 15 minutes, walk for about 15 minutes, [and] climb one flight of stairs." Dkt. #6, p. 367. Dr. Lee thus assessed her as having only a "moderate" limitation in prolonged standing. Dkt. #6, p. 369.

Moreover, both Dr. Lawrence and Dr. Koening, after reviewing plaintiff's medical records, concluded that she was able to stand and/or walk for approximately six

hours in an eight-hour workday and sit for the same duration. Dkt. #6, pp. 88, 103. As the Commissioner correctly notes, the ALJ's inclusion of the sit/stand option thus rendered the RFC more conservative than those proposed by the agency opinions. Dkt. #9-1, pp. 14-15.

Finally, plaintiff's citation to *Kouadio v. Astrue*, No. 08-CV-881-A, 2010 WL 4922672 (W.D.N.Y. Dec. 2, 2010), is unavailing. There, the only medical evidence of plaintiff's work-related functioning was a treating physician's opinion that lacked support in his own records and an opinion from a consultative examiner that was silent as to plaintiff's ability to sit and stand over time. *Id.* at *5. The court also concluded that the ALJ erred by failing to specify the frequency of plaintiff's need to alternate sitting and standing. *Id.* at *6.

Here, the record was sufficiently developed as to plaintiff's ability to alternate sitting and standing, and the ALJ specified the frequency of that option: "every 20 minutes." Dkt. #6, p. 26.

The Court thus concludes that this aspect of the RFC is supported by substantial evidence.

### Dr. Deneen's Opinion Regarding Mental Limitations

Plaintiff's third and final argument pertains to the ALJ's treatment of evidence regarding plaintiff's mental health.

On August 13, 2020, plaintiff was examined by Dr. Todd Deneen, Psy.D., a consultative examiner. Dkt. #6, pp. 371-375. Dr. Deneen noted that plaintiff had previously been diagnosed with anxiety and depression, the latter of which was related to the death of her daughter in February 2020. Dkt. #6, p. 372. Upon his exam, Dr. Deneen found plaintiff's thought processes to be "[c]oherent and goal directed with no evidence of hallucinations, delusions, or paranoia." Dkt. #6, p. 373. She was depressed, but her attention and concentration were intact; she was oriented to person, place, and time; her recent and remote memory skills were intact; her intellectual functioning was average; and her insight and judgment were good. Dkt. #6, pp. 373-374.

In his medical source statement, Dr. Deneen opined that plaintiff would have "no limitations" in most mental functions and only a "mild limitation" in regulating emotions, controlling behavior, and maintaining well-being. Dkt. #6, p. 374. He further opined that "this does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis" and that her prognosis was "good." Dkt. #6, p. 375.

In his decision, the ALJ found Dr. Deneen's report, as well as the reports of the state agency mental consultants who reviewed it, to be "wholly persuasive." Dkt. #6, p. 23. The ALJ concluded that plaintiff's anxiety and depression "did not cause more than minimal limitation in [her] ability to perform basic mental work activities and were therefore nonsevere." *Id.* Accordingly, the ALJ included no mental limitations in plaintiff's RFC.

"When substantial evidence in the record supports only mild limitations in mental functioning, an ALJ is not required to include mental limitations or restrictions in the RFC." *Sherry T. v. Comm'r of Soc. Sec.*, CASE # 1:21-cv-00977, 2023 WL 8030129, at *4 (W.D.N.Y. Nov. 20, 2023) (citing *Lynette W. v. Comm'r of Soc. Sec.*, 19-CV-1168, 2021 WL 868625, at *4 (W.D.N.Y. Mar. 9, 2021)).

The Court thus finds plaintiff's argument on this point to be without merit.

For the above reasons, the Court finds that the ALJ's decision was based on substantial evidence.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #8) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. #9) is granted.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

DATED:      Buffalo, New York

            May 14, 2024

                                     s/ H. Kenneth Schroeder, Jr.
                                    H. KENNETH SCHROEDER, JR.
                                    United States Magistrate Judge